SEP 11 2025 PM2:13 FILED-USDC-CT - BPT - CT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MARK FIGUEROA
Petitioner

v.

WARDEN FLOWERS, FCI DANBURY
Respondent

Case No. ________________

PETITIONER'S MEMORANDUM OF LAW
IN SUPPORT OF SECTION 2241 PETITION

Now comes the Petitioner, Mark Figueroa, pro se, and hereby submits this Memorandum of Law in support of his Section 2255 petition.

## I. FACTUAL BACKGROUND

In 2024, the Petitioner was incarcerated at the FPC-Devens facility. On December 19, 2024, the FPC Devens Unit Team attempted to locate Petitioner, but was unsuccessful. Immediately after a count was conducted, Petitioner and another inmate were located in the hallway and Officer Monette determined that Petitioner had been off of the FPC-Devens grounds. Officer Monette issued an incident report (EXHIBIT 1). Officer Monette stated in his report that security video showed the Petitioner leaving the building and the video showed the Petitioner returning to the building through a back door. The incident report charged Petitioner with violating BOP disciplinary code 200 (escape - return within 4 hours).

During the DHO hearing, the Petitioner was not allowed to review any of the security videos and the DHO made specific findings based on security video that was not previously disclosed to Petitioner and videos that were not mentioned in the incident report.

The DHO found the Petitioner guilty and sanction Petitioner 27 loss of good conduct days among other sanctions. Petitioner fully exhausted his administrative remedies on this issue.

## II. LEGAL STANDARD

Mr. Figueroa seeks relief under 28 U.S.C. §2241. "A writ of habeas corpus under §2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001). "Through a petition pursuant to 28 U.S.C. §2241, a federal prisoner may seek to expunge 'disicplinary sanctions from his record, including the loss of good time credits.'" Nichols v. Von Blanckensee, 2018 U.S. Dist. LEXIS 157296, 2018 WL 4387558, at *2 (S.D.N.Y. Sept. 14, 2018)(quoting Carmona, 243 F.3d at 632).

In a prison disciplinary proceeding "the full panoply of rights due a defendant in [a criminal prosecution] does not apply." Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Where, as here, a petitioner's challenge to prison disciplinary proceedings sounds in due process, the reviewing court must determine only whether the petitioner received: "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relief upon and the reasons for the disciplinary actions taken." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004). In addition, the district court must determine that "the findings of the prison disciplinary board [were] supported by some evidence in the record." Williams v. Menifee, 331 F. App'x 59, 60-61 (2d Cir. 2009).

III. ARGUMENT

Here, the Petitioner was charged with an escape, which means that Petitioner left the FPC Devens grounds. However, according to the incident report, the evidence demonstrated that Petitioner had gone outside of the FPC Devens building and then returned to the building. The incident report did not allege that the Petitioner had left the FPC Devens perimeter or grounds. The incident report was insufficient to support a guilty finding of an escape.

For prison disciplinary proceedings, the disciplinary proceeding must be supported by "some evidence." Black v. Lane, 22 F.3d 1395, 1402 (7th Cir. 1994). That said, a disciplinary decision must have "some factual basis." McPherson v. McBride, 188 F.3d 784, 786 (7th Cir. 1999). Once more, the evidence relied on in reaching the disciplinary decision must "bear some indicia of reliability." Scruggs v. Jordan, 485 F.3d 934, 939 (7th Cir. 2007).

Prior to the hearing, the Petitioner was informed only of the incident report and the security videos mentioned in the incident report. The Petitioner was not informed of any other evidence that would be relied upon. Prior to the hearing, the Petitioner requested the opportunity to review the evidence against him, including the security videos.

At the DHO hearing, the DHO relied upon the incident report and also relied upon undisclosed security videos that allegedly showed the Petitioner leaving the FPC Devens perimeter. Specifically, the DHO stated that the undisclosed videos showed the Petitioner running through a cemetery that was adjacent to the FPC Devens facility. Notably, there are no security cameras that record the cemetery itself, especially since the cemetery is private property.

These additional videos were not disclosed to the Petitioner prior to the DHO hearing nor were the videos mentioned in any incident report or other documentation provided to the Petitioner prior to the disciplinary hearing. The incident report itself and the video mentioned within the incident report did not support a violation of offense code 200 (escape). At best, that incident report and videos demonstrated a violation that Petitioner was out-of-bounds, a much lesser offense.

At the DHO hearing, the Petitioner requested the opportunity to review the videos that allegedly depicted him leaving the FPC Devens perimeter. The DHO refused the request. Petitioner argues that the videos did not exist. The DHO was aware that based on the evidence presented, a violation of offense code 200 could not be found. Petitioner argues that the DHO fabricated the alleged fact that videos existed showing Petitioner leaving the FPC Devens perimeter in order to be able to find the Petitioner guilty of the charge against him. The fact that the DHO refused to allow Petitioner to view the videos and the fact that the alleged videos are not mentioned anywhere in the incident report documentation further casts doubt on the video's existence. This also raises questions as to the whether the DHO was "fair and impartial".

Here, the DHO was apparently involved in the investigation of the incident. The DHO reviewed camera video that was not reviewed by the charging officer and not included in the incident report. The DHO participated in the investigation in order to ensure that the 200-series offense code would substantiated. In effect, the DHO became the "charging officer" and therefore violated his duty to be an impartial decision maker.

"In order to insure impartiality, the DHO may not be the reporting officer, investigating officer, or UDC member, or a witness to the incident or play any significant part in having the charge(s) referred to the DHO." 28 C.F.R. §541.16(b). See also, Greer v. Hogston, 288 F. App'x 797, 799 (3d Cir. 2008); Redding v. Holt, 252 F. App'x 488 (3rd Cir. 2007).

Additionally, Petitioner was prejudiced by the DHO's investigatory role and the lack of transparency of the evidence against the Petitioner. "To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing." Clark v. Dannheim, 490 F.Supp.2d 426, 429 (W.D.N.Y. 2008). In the instant case, the DHO deprived Petitioner of his right to review evidence and the evidence used against Petitioner was previously undisclosed.

The evidence used against Petitioner lacks an indicia of reliability. The DHO's claims are not supported and there is no evidence that FPC Devens even has cameras that could record the various locations and angles that the DHO desribed. The alleged videos were not reviewed by the charging officer or his superiors. The incident reports makes no mention of the alleged video and the DHO refused to produce the video, further adding doubt to its existence.

As such, the Court should find that the DHO hearing lacked the required due process protections that the Supreme Court articulated in Wolff v. McDonnell, 418 U.S. 539, 555-558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). As such, the Court should either reverse the DHO's decision and expunge the matter or in the alternative, determine that a re-hearing is required by an impartial DHO for the incident report.

Respectfully Submitted,

Mark Figueroa
Reg. No. 66497-004
FCI Danbury
33½ Pembroke Road
Danbury, CT 06811

BP-A0288 **INCIDENT REPORT**
Dept. of Justice / Federal Bureau of Prisons

Part I - Incident Report

| | | | |
|---|---|---|---|
| 1. Institution: DEVENS FMC | | Incident Report Number: 4050788 | |
| 2. Inmate's Name<br>FIGUEROA, MARK | 3. Register Number<br>66497-004 | 4. Date of Incident<br>12-19-2024 | 5. Time<br>1925 hrs |
| 6. Place of Incident<br>FPC | 7. Assignment<br>CMP LAND | 8. Unit<br>6 SCP | |
| 9. Incident<br>200 -- ESCAPE-RETURN WITHIN 4 HOURS. | | 10. Prohibited Act Code(s)<br>200 | |

11. Description Of Incident
(Date: 01-07-2025 Time: 1400 hrs staff became aware of incident)

This is a Re-Write.
This is a re-write,
On January 7, 2025, at approximately 2:00 PM, I became aware investigative case DEV-25-0048 had been signed off and closed by the Warden. On December 19, 2024, at approximately 7:00 PM, Unit Team staff were attempting to locate inmate Figueroa, Mark, Reg. No. 66497-004 at the FPC. Unit Team staff searched all immediate areas to include tv room, education room, computer room, bathroom and living quarters. Unit Team staff could not locate inmate Figueroa. The FPC is currently restricted from going outdoors except for work detail purposes due to numerous items of contraband being recovered in common areas. I.E. cellphones and vape pens. Utilizing the intercom system, Unit Team staff called for inmate Figueroa three (3) separate times to report to the officer's station. All three attempts were unsuccessful. At this time Unit Team staff in conjunction with the Unit Officer announced an impromptu count in an attempt to locate inmate Figueroa. Count was announced over the intercom system; blue count lights were activated, and all inmates were directed to return to their living quarters. At the conclusion of the count, staff discovered a total of two (2) inmates were unaccounted for. As staff were exiting the living quarters and walking back to the officer station, they encountered inmates Figueroa and Joseph, Patrick, Reg. No. 99501-038 in the hallway of the FPC. Staff observed inmate Figueroa breathing very heavily and appeared to be out of breath as if he had just finished running. Staff asked both inmates where they were to which they both responded, "Using the bathroom." Staff notified the Operations Lieutenant of what just transpired. Suspecting both inmates Figueroa and Joseph had just returned to the FPC from off grounds, the Operations Lieutenant conducted a review of the VMS Camera System. At approximately 7:25 PM, the Operations Lieutenant positively identified both inmates Figueroa and Joseph entering the FPC via the back entrance. At this time, both inmates Figueroa and Joseph were escorted to the Special Housing Unit pending the outcome of an SIS investigation.

On December 20, 2024, at approximately 9:25 AM, an interview was conducted with inmate Figueroa in the Special Housing Unit. Inmate Figueroa denied being off FPC grounds and returning to the FPC at approximately 7:25 PM, on December 19, 2024. When asked about his whereabouts and as to why staff could not locate him despite being called over the intercom and not being present for an emergency count, inmate Figueroa made the following statement, "I was not outside. I don't care if you think you have me on camera, it's not me. I was in the bathroom in the tv room with my headphones on. I didn't hear staff calling for me. If they would have looked in the bathroom, they would have found me."

Based on the investigation, it can be concluded, both inmates Figueroa and Joseph did commit prohibited act 200 (Escape from Non-Secure Institution). This conclusion is based on statements provided during the SIS interviews in conjunction with video evidence of the incident. During the SIS interviews both inmates Figueroa and Joseph denied being off grounds and returning to the FPC at approximately 7: 25 PM, on December 19, 2024. When

The Government Paperwork Elimination Act (GPEA) of 1998 authorized Federal Agencies the use of electronic forms, electronic filing, and electronic signatures to conduct office business.

BP-A0288 **INCIDENT REPORT**
Dept. of Justice / Federal Bureau of Prisons

asked about their whereabouts both inmates stated they were utilizing the inmate bathrooms while staff were attempting to locate them. However, during a review of the VMS Camera System both inmates were observed exiting the FPC out of a window located in cell 54 at approximately 4:52 PM and later returning to the FPC through the back door at approximately 7:25 PM. Due to the severity of the incident, the matter was referred to the United States Attorney's Office, Massachusetts for possible prosecution. However, the matter was declined. Therefore, at the conclusion of the investigation, both inmates Figueroa and Joseph will be administratively charged with code 200 (Escape from Non-Secure Institution). A review of both inmates Figueroa and Joseph's email and telephone correspondence were conducted but did not provide any additional evidence related to this investigation. The SIS Department has determined both inmates Figueroa and Joseph defeated the security measures of the

| 12. Typed Name/Signature of Reporting Employee | | 13. Date And Time |
|---|---|---|
| **T Monette** | | **01-07-2025 1426 hrs** |
| 14. Incident Report Delivered to Above Inmate By (Type Name/Signature) | 15. Date Report Delivered | 16. Time Report Delivered |
| **J. Sabella** | **01-07-2025** | **1755 hrs** |

The Government Paperwork Elimination Act (GPEA) of 1998 authorized Federal Agencies the use of electronic forms, electronic filing, and electronic signatures to conduct office business.

BP-A0288
Dept. of Justice / Federal Bureau of Prisons

# INCIDENT REPORT

| Inmate's Name | Register Number | Incident Report Number |
|---|---|---|
| FIGUEROA, MARK | 66497-004 | 4050788 |

## Part II - Committee Action

17. Comments of Inmate to Committee Regarding Above Incident

18. A. It is the finding of the committee that you:

_ Committed the Prohibited Act as charged.

_ Did not commit a Prohibited Act.

_ Committed Prohibited Act Code(s)

B. _ The Committee is referring the Charge(s) to the DHO for further Hearing.

C. _ The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days.

19. Committee Decision is based on Specific Evidence as Follows:

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act)

21. Date And Time Of Action (The UDC Chairman's signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings.)

Chairman (Typed Name/Signature) Member (Typed Name) Member (Typed Name)

The Government Paperwork Elimination Act (GPEA) of 1998 authorized Federal Agencies the use of electronic forms, electronic filing, and electronic signatures to conduct office business.

BP-A0288
# INCIDENT REPORT
Dept. of Justice / Federal Bureau of Prisons

| Inmate's Name | Register Number | Incident Report Number |
|---|---|---|
| FIGUEROA, MARK | 66497-004 | 4050788 |

| Part III - Investigation | 22. Date & Time Investigation Began |
|---|---|
| | 01-07-2025 1805 hrs |

23. Inmate Advised of Right To Remain Silent: You are advised of your right to remain silent at all stages of the discipline process. Your silence may be used to draw an adverse inference against you at any stage of the discipline process. Your silence may not be used to support a finding that you have committed a prohibited act.

The Inmate Was Advised Of The Above Right By J. Sabella
At (Date/time) 01-07-2025 1810 hrs

24. Inmate statement and attitude

Inmate Figueroa #66497-004 was advised and understood his rights.
Inmate Figueroa #66497-004 indicated to this investigator that he understood the charges.
Inmate Figueroa #66497-004 elected to make the following statement during the investigation: No Comment.
Inmate Figueroa #66497-004 displayed a fair attitude.

25. Other facts about the incident, statements of those persons present at scene, disposition of evidence, etc.

Inmate Figueroa #66497-004 did not request a witness. After reviewing the incident report contents and the supporting documentation the incident report is warranted. A delay in serving this incident report in a timely manner was due to pending sis investigation and a fbi declination

Incident Report - FBI Declination Notification -- (BOP-IRFBI)
Incident Report - Chain of Custody, Contraband -- (BOP-IRCCC)
Incident Report - Staff Memorandums -- (BOP-IRMEM)

26. Investigator's comments and conclusions

It is the conclusion of this investigation that Inmate Figueroa #66497-004 has been appropriately charged for 200 based on the facts contained within Section 11.

27. Action taken

Inmate Lopez, Angel, Reg. No. 38021-509 will remain in Special Housing, and a copy of this Incident Report has been forwarded to the UDC for further disposition.

Date and Time Investigation Completed: 01-07-2025 1842 hrs

Printed Name/Signature Of Investigator: J. Sabella

Investigator Title: LT

BP-A0304 **DISCIPLINE HEARING OFFICER REPORT** IR#: 4050788
Reg#: 66497-004
Dept. of Justice / Federal Bureau of Prisons FIGUEROA, MARK

| | |
|---|---|
| Institution: **DEVENS FMC** | Incident Report Number: **4050788** |
| NAME OF INMATE: **FIGUEROA, MARK** | REG.NO.: **66497-004** UNIT: **6 SCP** |
| Date of Incident Report: **01-08-2025** | Offense Code(s): **200** |
| Date of Incident: **12-19-2024** | |

Summary of Charges:
**200 -- ESCAPE-RETURN WITHIN 4 HOURS.**

I. NOTICE OF CHARGE(S)

A. Advanced written notice of charge (copy of Incident Report) was given to inmate on **01-08-2025** at **1955 hrs** (by staff member) **Marshall**

B. The DHO Hearing was held on **02-04-2025** at **1224 hrs**

C. The inmate was advised of the rights before the DHO by (staff member): **S. Godinez** on **01-14-2025** and a copy of the advisement of rights form is attached.

D. Delay in Process **Rewrite**

II. STAFF REPRESENTATIVE

A. Inmate waived right to staff representative: [Yes] **X** [No] _

B. Inmate requested staff representative and **NA** appeared.

C. Staff Representative's Statement:
**NA**

D. Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that:
**NA**

E. Staff representative **NA** was appointed.

III. PRESENTATION OF EVIDENCE

A. Inmate ( ) admits ( **X** ) denies the charge(s).

B. Summary of Inmate Statement:
**I never left the perimeter. I was behind the camp by the Indian Hut. I did go out the window. I was just vaping.**

BP-A0304 **DISCIPLINE HEARING OFFICER REPORT** IR#: 4050788
Reg#: 66497-004
Dept. of Justice / Federal Bureau of Prisons FIGUEROA, MARK

C. Witnesses

1. The inmate waived right to witnesses. [Yes] X [No] _

2. The following persons were called as witness at this hearing and appeared (Each witness name and statement listed below):
**NA**

3. The following persons requested were not called for the reason(s) given (Each witness name and statement listed below):
**NA**

4. Unavailable witnesses were requested to submit written statements and those statements received were considered (Each witness name and statement listed below):
**NA**

D. Documentary Evidence. In addition to the Incident Report and Investigation, the DHO considered the following documents:
**Incident Report - SIS Reports -- (BOP-IRSIS)**
**Incident Report - Staff Memorandums -- (BOP-IRMEM)**
**Incident Report - Chain of Custody, Contraband -- (BOP-IRCCC)**
**Incident Report - Staff Memorandums -- (BOP-IRMEM)**
**Incident Report - FBI Declination Notification -- (BOP-IRFBI)**
**Inmate Rights at Discipline Hearing -- (BP-A293)**
**Notice of Discipline Hearing Before the (DHO) -- (BP-A294)**
**CCTV ECN**

E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate. The confidential information was documented in a separate report. The confidential information has been (confidential informants have been) determined to be reliable because:
**NA**

IV. FINDINGS OF THE DHO

X A. The act was committed as charged.
_ B. The following act was commmitted:
_ C. No prohibited act was committed: Expunge according to inmate discipline PS.

V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations written documents, etc.)

**The DHO noted you did not receive a copy of your incident report within 24 hours of staff becoming aware of the incident. The DHO noted the reason for the delay was due to the report being re-written to clarify the incident. The DHO did not feel the delay of this incident report impeded any undue hardship in your ability to defend yourself at this hearing. Your due process rights were reviewed with you by the DHO and you stated you understood your rights. The DHO read aloud the incident report. At no time during the DHO hearing did you raise any procedural issues, request witnesses, request staff representation or present written documentation as evidence.**

**The DHO finds on January 8, 2025, you were charged with violating prohibited act 200 --**

ESCAPE-RETURN WITHIN 4 HOURS. The evidence supports ESCAPE-RETURN WITHIN 4 HOURS; therefore, code 200 was upheld.

To support this finding, the DHO relied upon staff member Monette's written account of the incident paraphrased as follows: This is a Re-Write.
This is a re-write,
On January 7, 2025, at approximately 2:00 PM, I became aware investigative case DEV-25-0048 had been signed off and closed by the Warden. On December 19, 2024, at approximately 7:00 PM, Unit Team staff were attempting to locate inmate Figueroa, Mark, Reg. No. 66497-004 at the FPC. Unit Team staff searched all immediate areas to include tv room, education room, computer room, bathroom and living quarters. Unit Team staff could not locate inmate Figueroa. The FPC is currently restricted from going outdoors except for work detail purposes due to numerous items of contraband being recovered in common areas. I.E. cellphones and vape pens. Utilizing the intercom system, Unit Team staff called for inmate Figueroa three (3) separate times to report to the officer's station. All three attempts were unsuccessful. At this time Unit Team staff in conjunction with the Unit Officer announced an impromptu count in an attempt to locate inmate Figueroa. Count was announced over the intercom system; blue count lights were activated, and all inmates were directed to return to their living quarters. At the conclusion of the count, staff discovered a total of two (2) inmates were unaccounted for. As staff were exiting the living quarters and walking back to the officer station, they encountered inmates Figueroa and Joseph, Patrick, Reg. No. 99501-038 in the hallway of the FPC. Staff observed inmate Figueroa breathing very heavily and appeared to be out of breath as if he had just finished running. Staff asked both inmates where they were to which they both responded, "Using the bathroom." Staff notified the Operations Lieutenant of what just transpired. Suspecting both inmates Figueroa and Joseph had just returned to the FPC from off grounds, the Operations Lieutenant conducted a review of the VMS Camera System. At approximately 7: 25 PM, the Operations Lieutenant positively identified both inmates Figueroa and Joseph entering the FPC via the back entrance. At this time, both inmates Figueroa and Joseph were escorted to the Special Housing Unit pending the outcome of an SIS investigation.

On December 20, 2024, at approximately 9:25 AM, an interview was conducted with inmate Figueroa in the Special Housing Unit. Inmate Figueroa denied being off FPC grounds and returning to the FPC at approximately 7:25 PM, on December 19, 2024. When asked about his whereabouts and as to why staff could not locate him despite being called over the intercom and not being present for an emergency count, inmate Figueroa made the following statement, "I was not outside. I don't care if you think you have me on camera, it's not me. I was in the bathroom in the tv room with my headphones on. I didn't hear staff calling for me. If they would have looked in the bathroom, they would have found me."

Based on the investigation, it can be concluded, both inmates Figueroa and Joseph did commit prohibited act 200 (Escape from Non-Secure Institution). This conclusion is based on statements provided during the SIS interviews in conjunction with video evidence of the incident. During the SIS interviews both inmates Figueroa and Joseph denied being off grounds and returning to the FPC at approximately 7: 25 PM, on December 19, 2024. When asked about their whereabouts both inmates stated they were utilizing the inmate bathrooms while staff were attempting to locate them. However, during a review of the VMS Camera System both inmates were observed exiting the FPC out of a window located in cell 54 at approximately 4:52 PM and later returning to the FPC through the back door at approximately 7:25 PM. Due to the severity of the incident, the matter was referred to the United States Attorney's Office, Massachusetts for possible prosecution. However, the matter was declined. Therefore, at the conclusion of the investigation, both inmates Figueroa and Joseph will be administratively charged with code 200 (Escape from Non-Secure Institution). A review of both inmates Figueroa and Joseph's email and telephone correspondence were conducted but did not provide any additional evidence related to this investigation. The SIS Department has determined both inmates Figueroa and Joseph defeated the security measures of the FPC and pose a direct threat to the safe and secure running of the institution. Furthermore, in the interest of safety, security, and welfare of the general public, Figueroa and Joseph cannot be appropriately managed at a minimum-security institution and it is recommended they both be transferred to a higher-level security institution.

In addition to the previous written account of the incident, the DHO considered your statement during the DHO hearing in which you stated the following: I never left the perimeter. I was behind the camp by the Indian Hut. I did go out the window. I was just vaping.

Your contention that you never left the perimeter and were only behind the camp by the Indian Hut vaping does not relieve you of the responsibility by the DHO. The DHO finds you are attempting to minimize your actions and not being truthful with the DHO in order to not accept responsibility for your actions. The DHO reviewed the video footage and found it was consistent with the reporting employee's version of events. The DHO also reviewed the video timeline which tracked you exiting the rear window of the camp, walking along the fence line of the Native American sweat lodge, then running in the direction of the adjacent cemetery, then entering the cemetery tree line and running through the cemetery and fleeing the camp then returning to the camp approximately two hours later. The DHO finds your statement that you only went to the Indian Hut to be false and merely an attempt to mislead the DHO. The DHO reviewed multiple memorandums from staff who conducted a search of the camp in an attempt to locate you. The DHO finds you gave a conflicting statement to the reporting employee when you stated you were in the bathroom which also detracts from your credibility in this case. The DHO noted that the cemetery is not part of the institution grounds and therefore your departure from the institution grounds is deemed an Escape. The DHO gave greater weight to the reporting staff member's statements; specifically, that you escaped from the Camp when it was determined after an SIS investigation that you exited the Camp through a window at approximately 4:52 pm and returned through the back door at approximately 7:25 pm after a search of the camp from multiple staff proved unsuccessful. Thus, the DHO determined your claim that you never left the perimeter and were only behind the camp by the Indian Hut vaping was without merit.

Therefore, based on the greater weight of evidence, the DHO determined you did not present sufficient evidence to refute the charge. Consequently, the DHO finds you committed prohibited act 200 -- ESCAPE-RETURN WITHIN 4 HOURS.

VI. SANCTION OR ACTION TAKEN

200 (FREQ 1) - DIS GCT 27 DAYS, 200 (FREQ 1) - DS 21 DAYS, 200 (FREQ 1) - LP COMM 6 MONTHS, 200 (FREQ 1) - LP PHONE 6 MONTHS, 200 (FREQ 1) - LP VISIT 6 MONTHS

When imposing a sanction of Disciplinary Segregation (DS), The Discipline Hearing Officer considered the time served as a primary means when calculating your sanction of (DS). This may not always be a viable option, due to concerns related to the safety of staff, safety of inmates or safety and security of the institution.

VII. REASON FOR SANCTION OR ACTION TAKEN

The action/behavior on the part of any inmate to escape from any facility/institution poses a serious threat to the ability of the Bureau of Prisons to maintain proper inmate accountability at all times. In the past, evidence has shown inmates on escape status commit crimes in order to survive while they are in the community on escape status. Inmate who escape clearly show a lack of responsibility given to them when placed at a Camp, on Furlough or a Furlough Transfer and this action/behavior cannot and will not be tolerated. The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behaviors at all times.

BP-A0304 **DISCIPLINE HEARING OFFICER REPORT** IR#: 4050788
Reg#: 66497-004
Dept. of Justice / Federal Bureau of Prisons FIGUEROA, MARK

VIII. APPEAL RIGHTS: X The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure. A copy of this report has been given to the inmate.

IX. Discipline Hearing Officer

| Printed Name | Signature | Date |
|---|---|---|
| AMICO | AMICO | 02-19-2025 |

DHO Report Delivered to Inmate by:

| Printed Name of Staff | Signature of Staff | Date & Time Delivered |
|---|---|---|
| Amico | Amico | 02-25-2025 0820 hrs |

The Government Paperwork Elimination Act (GPEA) of 1998 authorized Federal Agencies the use of electronic forms, electronic filing, and electronic signatures to conduct office business.

MARK ANTHONY FIGUEROA, 66497-004
DANBURY FCI UNT: 2 GP QTR: K02-008U
ROUTE 37
DANBURY, CT 06811

**Administrative Remedy No. 1233767-A1**
**Part B - Response**

You appeal the decision of the Discipline Hearing Officer (DHO) regarding incident report number 4050788, where you were found to have committed the prohibited act of Code 200, Escape - Return Within 4 Hours. You contest the finding of guilt and state there is not enough evidence to establish guilt. You also state such evidence contains false and conflicting statements. Although you do not specify a relief in your Central Office Administrative Remedy Appeal, it appears you request the incident report be reduced to violation of Code 316, Being in an Unauthorized Area

Our review of your disciplinary proceedings reveal your DHO report adequately supports the decision rendered by the DHO. According to Program Statement 5270.09, Inmate Discipline Program, disciplinary procedures were followed. You were given advanced written notice of the charge against you more than 24 hours prior to your appearance before the DHO. You were afforded an opportunity to request a staff representative and statements from witnesses. Documented evidence reflects you waived these rights. You were afforded the right to present a statement and submit documentary evidence. Any statements you made throughout the disciplinary process are documented and you did not present any documentary evidence on your behalf. The DHO's decision was based upon the evidence detailed in Section V of the DHO report, which includes the incident report of the reporting officer, an SIS report, supporting staff memorandums, a review of your email and telephone correspondence, a review of video surveillance, and the conflicting statements you made throughout the disciplinary process. Although you question the amount of evidence, the DHO clearly documented what evidence was used to establish your guilt and explained the reasoning as to why it was believed the elements of the offense were met. Although you contend false statements were made, you provided no evidence, nor was any discovered to back such claim. The sanctions imposed were commensurate to the severity level of the offense and in compliance with policy.

Accordingly, your appeal is denied.

July 28, 2025
Date

T. Barnett
Timothy Barnett, Administrator
National Inmate Appeals

U.S. Department of Justice

Federal Bureau of Prisons

# Central Office Administrative Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: FIGUEROA MARK A (LAST NAME, FIRST, MIDDLE INITIAL) 66497-004 (REG. NO.) A (UNIT) Lewisburg (INSTITUTION)

**Part A - REASON FOR APPEAL**

Please see attached statement.

MAY 29 2025
DATE

Mark A. Fig
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
JUN 27 2025
Administrative Remedies
Federal Bureau of Prisons

DATE

GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 1233767-A1

**Part C - RECEIPT**

CASE NUMBER:

Return to: LAST NAME, FIRST, MIDDLE INITIAL REG. NO. UNIT INSTITUTION

SUBJECT:

DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN

PRINTED ON RECYCLED PAPER

BP-231(13)
JUNE 2002

May 29, 2025

I respectfully request to appeal incident report 4050788. Officer Monette does not have enough evidence to charge me with escape. Monette never stated or showed any evidence of me leving the F.P.C grounds. The D.H.O. report has false and conflicting statements from S.I.S. Monettes report. The D.H.O states he saw me running through the cemetery fleeing the F.P.C. Monette never mentioned this in his report. This would had been overwhelming evidence proving I left the F.P.C. grounds, if it was true, so why did he not mentioned me running through the cemetery in his report, none of the video evidence was presented to me so I'm asking that you review this alleged video of me running through the cemetery because I did not run through the cemetery and this is the only way I can prove I did not leave the premises of the F.P.C. If you look at incident report 4044829 the officer states he watched an inmate walk past the out of bounds sign go off camera out of view and cant see any further, so how is the D.H.O. able to see me on camera out of bounds inside the cemetery. The DHO stated the cemetery is not part of the F.P.C. grounds so how would the F.P.C. be able to record inside of private property. I feel I've been over charged this should of stayed a 316 unathorized area incident report because nothing in the S.I.S. report show me leaving the F.P.C. when officer Larkin wrote the original report 4043029 he contacted the operations Lt. who stated he observed me being in the rear of the camp and did not state I left the F.P.C. premises. I was in the back of the camp hanging out and vaping. The D.H.O made false statements because the SIS. report was not enough to prove an escape. The D.H.O should of been neutral and made a fair ruling of the evidence presented in the S.I.S. report. Please be advised I've been in the SHU since dec. 19 2024 with no phone or visits since Feb. 2 25 and my family ties have been lost.

Mark A [signature]